UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 20 CR 260 |
| v. | ) | |
| | ) | The Honorable Andrea R. Wood |
| TIMOTHY O'DONNELL | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

On May 30, 2020, thousands of people converged on the downtown area to protest the murder of George Floyd. The majority of those protestors were peaceful. Some, including defendant Timothy O'Donnell, were not. O'Donnell was walking amongst a large group of people while wearing a replica "Joker" mask. After several minutes walking with the crowd O'Donnell came upon a Chicago Police Department vehicle that was parked on the 200 block of North State Street. O'Donnell approached the vehicle and another individual handed him a piece of cloth. O'Donnell placed the piece of cloth in the fuel filler of the vehicle and ignited the cloth with a lighter. The CPD vehicle ignited and the fire spread to the interior of the vehicle, ultimately destroying the vehicle entirely. After starting the fire, O'Donnell hung around to celebrate his actions and pose for photos in front of the burning vehicle.



Considering the nature and circumstances of the offense, the defendant's background and characteristics, and the need to afford adequate deterrence and promote respect for the law, the government recommends a sentence of incarceration within the advisory sentencing Guidelines range of 46 to 57 months.

## I. PRELIMINARY ADVISORY SENTENCING GUIDELINES RANGE

As a matter of process, the District Court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the Section 3553(a) factors, and adequately explain the chosen sentence, including an explanation for any variance from the Guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007).

The government agrees with the Probation Office's determination that the base offense level is 24, pursuant to Guideline § 2K1.4(a)(1)(B), because the offense

involved the destruction and attempted destruction of a state and government facility. PSR at ¶ 14.

The government also agrees that the defendant has accepted responsibility in a timely fashion and receives a three-point reduction to his offense level pursuant to Guidelines §§ 3E1.1(a) and (b). PSR at ¶¶ 21-22.

Finally, the government agrees with the Probation Office that defendant's criminal history points equal 4 and place him in Category III. PSR at ¶ 34-40.

Pursuant to these calculations, the defendant's total offense level is 21, his criminal history category is III, and his advisory Guidelines range of imprisonment is 46-57 months. PSR at ¶ 103. The government also agrees that the Court may impose a period of supervised release of up to 3 years. PSR at ¶ 105.

## II. GOVERNMENT'S POSITION ON SENTENCING

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The "Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) (a "district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities."). Although a sentence within the Guidelines is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence.

For the foregoing reasons, the government respectfully submits that a sentence within the Guidelines is warranted in this case and most appropriately reflects the nature and circumstances of defendant's offense, his history and characteristics, the need to afford adequate deterrence, and promote respect for the law.

A.     **The Nature and Circumstances of Defendant's Crime**

The defendant's crime was extremely serious. He hijacked a critical moment in time for this city to, apparently, live out a scene from his favorite movie. The atmosphere and mood in the Loop on May 30, 2020 was tense and raw. Thousands of people traveled downtown, which had been largely vacated for the prior two months given the COVID pandemic, to protest the murder of George Floyd. Responding to reports of property damage and looting, CPD officers also converged on the Loop. The CPD officers were subject to threats, harassment, and projectiles from some members of the crowd throughout that afternoon and evening. Defendant arrived upon a volatile scene in the Loop and he made it more dangerous for police and protestors.

The defendant was part of that crowd and was, initially, a bystander. While wearing his replica Joker mask, he followed a crowd of people north as it confronted a line of CPD officers. Initially, he posed for photos, like the one below:



The defendant also recorded footage of the protests on his tablet and narrated some of the scenes. In one of those recordings, as the defendant walked down Wacker Drive, he casually joked, "beautiful day for a barbecue." Minutes later, he set fire to the CPD vehicle. The defendant was not the only person who vandalized that CPD vehicle, and he wasn't the only person who set fire to vehicles that evening. But he was the person responsible for setting fire to this vehicle. His actions put scores of people at risk, including police officers, firefighters, protesters, and bystanders; he interfered with law enforcement officers trying to protect the public at a time when their services were critical; he caused thousands of dollars in damages; and he served as the poster child for images that tarnished this city. And that last point may have been his goal. After setting fire to the CPD vehicle, the defendant stuck around to pose for pictures in front of the wreckage he created. He added to the chaos of an already chaotic night for no reason other than to live out his own fantasies.

5

Thankfully, no one was injured as a result of the fire the defendant set. Defendant knew what he was doing was dangerous and could hurt others. Indeed, surveillance footage of the offense shows a crowd of people running away from the vehicle as defendant lit the rag in the fuel filler area. Despite the obvious risks his actions posed to others, defendant did it anyway. Only by sheer luck was no one injured, but it could have been very different.

Accordingly, the nature and circumstances of defendant's offense warrant a significant sentence of imprisonment.

**B.     Defendant's History and Characteristics**

Defendant is 33 years old and has a long history of mental health, substance abuse, and addiction issues. PSR, ¶¶ 57-93. Defendant's serious drug addiction has cast a pall over his entire adulthood and is reflected in his criminal history. According to defendant, he first began using heroin at the age of 17, which is shortly before he began being arrested for criminal conduct. In addition to his opioid addiction, which continued up until his arrest for this offense, defendant also has suffered from cocaine, methamphetamine, and alcohol addiction. PSR, ¶¶ 88-89. Those addictions have overwhelmed his life and have been the primary driver of his criminal history. All of his convictions, which place him in criminal history category III, were driven by his addiction issues.

While defendant may assert that his mental health and substance abuse issues are mitigating, they do not excuse his criminal history. He bears responsibility for his repeated convictions (7) and arrests (11). Further, defendant has no employment

6

history and has never held a real job in his life. PSR ¶¶ 96-97. Accordingly, defendant's history and characteristics support a sentence within the advisory guidelines range.

### C. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Afford Adequate Deterrence

If there were ever a crime that showcased a disrespect for the law, it is this one. Defendant made that clear as he posed for pictures in front of the burning vehicle and narrated the recordings he filmed after he set fire to the CPD vehicle. In one such recording, defendant joked, "I wonder who started that."

It bears repeating just how turbulent that evening and weekend were in Chicago. It was the most violent and deadly weekend in over thirty years, with 18 murders in a 24-hour span, and 85 people shot and 24 killed over the three-day weekend. *See* https://www.bbc.com/news/world-us-canada-52984535 (last visited May 26, 2022). That is horrific. While defendant is not responsible for all that criminal conduct, defendant contributed to the lawlessness and violent mindset in the city. His conduct also pulled the some of the resources of the city away from that violence to attend to the chaos he created in the Loop. This case calls out for a sentence to promote respect for the law.

There is also a need for a sentence that sends a message to the public that chaos and destruction will be met with severe consequences. Not every participant in criminal conduct during a riot or civil unrest will be identified. But it is imperative that those who are receive significant punishment for their actions.

7

### III. GOVERNMENT'S POSITION ON SUPERVISED RELEASE

The government has no objections to the conditions of supervised release recommended by the Probation Office, and the government submits that a period of supervised release of three years is appropriate. The government also agrees with the special conditions and discretionary conditions of supervised release, as recommended by the Probation Office.

### IV. CONCLUSION

For the foregoing reasons, the government respectfully submits that a Guidelines sentence is appropriate here, and requests that the Court sentence defendant Timothy O'Donnell to a term of imprisonment within the Guideline range of 46-to 57 months, followed by three years of supervised release.

Date: May 27, 2022

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s *James P. Durkin*
JAMES P. DURKIN
Assistant United States Attorney
United States Attorney's Office
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 353-6630